UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:11-CV-00164-TBR

MARK A. TAYLOR            Plaintiff

v.

BILL ADAMS, Jailer, *et al.*            Defendants

**MEMORANDUM OPINION**

This matter is before the Court upon Defendants Bill Adams and McCracken County, Kentucky's Motion for Summary Judgment. (Docket No. 79.) Plaintiff Mark Taylor has responded, (Docket No. 81), and Defendants have replied, (Docket No. 83). Also pending before the Court is Plaintiff's "Dispositive Motion to Allege Waiver of Immunity by Defendants Policy of Negligent, Willful, Wanton, Malicious Conduct Against Plaintiff on the Grounds of Lack of Subject Matter Raised by Defendants." (Docket No. 84.) Defendants have responded to this Motion, (Docket No. 85), and Plaintiff has replied, (Docket No. 86). These matters are now ripe for adjudication. For the reasons that follow, Defendants' Motion for Summary Judgment will be GRANTED and Plaintiff's "Motion to Allege Waiver of Immunity" will be DENIED as moot.

BACKGROUND

Plaintiff, an inmate currently incarcerated at the McCracken County Jail (the "Jail"), brings this case pursuant to 42 U.S.C. § 1983. Plaintiff was arrested in December 2010 on charges of murder, kidnapping, and tampering with physical evidence. Also in December 2010, Plaintiff was charged with assaulting a jail nurse. In

January 2013, Plaintiff was convicted and sentenced to life in prison on the murder and kidnapping charges, and, in July 2013, Plaintiff was convicted of fourth degree assault on the jail nurse.

*Procedural Background*

In his initial Complaint, Plaintiff alleged a number of practices and conditions at the Jail that he claimed were dangerous and unsanitary, and sought monetary damages and injunctive relief against the Jail and Jailer Bill Adams. (*See* Docket No. 1.) Following an initial screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court dismissed the Jail, dismissed Plaintiff's individual- and official-capacity claims against Jailer Adams, and dismissed Plaintiff's claim for monetary damages because his Complaint failed to allege a present, existing injury. (Docket No. 23, at 6.) The Court allowed Plaintiff's Fourteenth Amendment deliberate indifference claim to proceed against McCracken County but only to the extent Plaintiff seeks injunctive relief. (Docket No. 23, at 6.) However, prior to the Court's Order on initial screening, Plaintiff filed eleven separate motions requesting various forms of equitable relief. (*See* Docket Nos. 5; 8; 9; 12; 13; 14; 17; 18; 19; 20; 22.) He then filed nine more after the Court's Order on initial screening. (*See* Docket Nos. 28; 30; 33; 37; 40; 43; 47; 48; 55.) Based on his motion to amend the complaint, (Docket No. 33), motion to assert claim for monetary damages, (Docket No. 43), and motion for declaratory judgment, (Docket No. 47), the Court allowed Plaintiff to amend his Complaint to add a deliberate indifference claim against McCracken County and Jailer Adams, in his individual capacity, for monetary damages based on his alleged exposure to paint fumes. (Docket No. 64, at 12.) Thus, at present, Plaintiff is

proceeding on two claims: (1) a Fourteenth Amendment deliberate indifference claim against McCracken County for injunctive relief based on his allegations of unsanitary and dangerous conditions at the Jail, and (2) a Fourteenth Amendment deliberate indifference claim against McCracken County and Jailer Adams for monetary damages based on physical injury allegedly suffered from exposure to paint fumes.

*Grievance History*

At all times relevant to this litigation, the Jail had a written policy governing the procedure for inmates to submit grievances. (*See* Docket No. 79-28.) The Jail's grievance procedure involves two steps: (1) the submission of a written grievance to the Chief Deputy Jailer, followed by (2) an appeal to the Jailer. That procedure is described in the inmate handbook that is given to all inmates upon arrival at the Jail. The Jail's grievance procedure states, in full:

### GRIEVANCE PROCEDURE

Grievances should be made on an orange grievance form. Grievances should be placed in a sealed envelope and addressed to the Chief Deputy. The Chief deputy has 15 days to answer your grievance.

Appeals:

If you are not satisfied with the grievance officer[']s ruling or the officer did not respond within the 15 days an appeal may be made to the Jailer. Appeals should be placed in a sealed envelope and addressed to the Jailer. You may also request a grievance hearing.

Grievances may also be mailed to the:

Director of Local Facilities
P O Box 2400
275 East Main St.
Frankfort, Ky 40602-2400

(Docket No. 79-28, at 1-2.)

Prior to the filing of his initial Complaint, the record reflects that Plaintiff submitted four grievances to Jail officials. (*See* Docket No. 79-17, at 1-8.) The record further reflects that since the filing of his initial Complaint in September 2011, Plaintiff has submitted roughly a dozen more. (*See* Docket Nos. 79-15, at 21; 79-17, at 9-19; 79-18, at 12; 79-22). The following is a chronology of those grievances.

The first grievance was submitted on January 15, 2011, in which Plaintiff requested the return of his legal papers, bible, and some drawings done by his children. (Docket No. 79-17, at 1.) That grievance was responded to the following day, January 16, 2011. (Docket No. 79-17, at 1.) There is no evidence that Plaintiff appealed the resolution of that grievance.

The second grievance was filed on January 16, 2011. (Docket No. 79-17, at 2-4.) That grievance was largely nonsensical,[1] but Jail officials nevertheless responded to each page of that three-page grievance the same day. (Docket No. 79-17, at 2-4.) There is no evidence that Plaintiff appealed the resolution of that grievance.

The third grievance was submitted on January 27, 2011. (Docket No. 79-17, at 5.) That grievance does not state a complaint but instead suggests that to "boost the

---

[1] The only substantive request across the three pages of Plaintiff's January 16, 2011, grievance appears to be a request to see his lawyer. (*See* Docket No. 79-17, at 2.) The remainder includes an array of seemingly disconnected, nonsensical statements such as: "stop this cruicifixtion [sic] of me . . . I am not Jesus Christ though I now respectfully feel that way," "God will get U," "the staff[']s loss of sleep greatly concerns me," "get you dick out of my ass, please! I do not enjoy it," "I am not gay," "I need 2 learn computer!," "wish I could one day be employed here," "Bill Adams - I love you," "I don't want to smooooch!," and "what doesn't kill me makes me stronger." (Docket No. 79-17, at 2-4.)

economy, provide nutrition, without eliminating jobs" the Jail should look into a business relationship with IGA food stores and avoid "Food World/Future City." (Docket No. 79-17, at 5.)  Plaintiff closes that grievance by stating: "If accepted I will never speak of this, not out for glory.  Just a buisiness [sic] man with hundreds of idea's [sic]." (Docket No. 79-17, at 6.)  That grievance was responded to on January 31, 2011. (Docket No. 79-17, at 5.) There is no evidence that Plaintiff appealed that grievance further.

The fourth grievance was submitted on January 30, 2011.  (Docket No. 79-17, at 7.)  In that grievance, Plaintiff complained about the handling of funds in his commissary account.  (Docket No. 79-17, at 7.)  Jail officials responded to that grievance the same day.  (Docket No. 79-17, at 7.) There is no evidence that Plaintiff appealed the resolution of that grievance.

(Plaintiff then filed his initial Complaint on September 30, 2011.)

On October 4, 2011, Deputy Jailer Tray English received a sealed envelope from Plaintiff containing a formal request that Plaintiff be allowed to visit with his wife, who was one of his codefendants also incarcerated at the Jail.  (Docket No. 79-18, at 12.) This request was documented as an "incident report" rather than a formal grievance. That incident report states that Plaintiff's request was denied on the basis that it presented "a major security risk to the jail, as there is no way to allow them to visit with each other, without security breaches."  (Docket No. 79-18, at 12.)  Deputy Jailer English advised Plaintiff that his request was denied via a written response and informed Plaintiff that he may appeal the Deputy's decision to Jailer Adams if he was

not satisfied with the Deputy's response. (Docket No. 79-18, at 12.) There is no evidence that Plaintiff appealed the denial of that request to Jailer Adams.

On November 30, 2011, Plaintiff sent a letter to the Kentucky Department of Corrections (KDOC) requesting "an investigation and thorough, unannounced inspection of the negligent abuse and battery by exposure, cruel and unusual punishment caused by the blatant disregard for inmate health and safety through subjection of subhuman conditions compounded by overcrowding." (Docket No. 79-22, at 1.) KDOC officials responded to Plaintiff in writing on December 30, 2011, explaining that there was no evidence in Taylor's allegations of any violation of Kentucky jail standards. (Docket No. 79-24.) On January 4, 2012, Chief Deputy Jailer Greg Garrison separately responded to Plaintiff regarding his letter to KDOC. (Docket No. 79-23.) There is no evidence that Plaintiff appealed the resolution of his request or that he followed up on that request any further with either KDOC or Jailer Adams.

The fifth formal grievance was filed on December 15, 2011. (Docket No. 79-17, at 9.) That grievance related to a request for slip-on athletic shoes and was responded to the same day by Jail officials. There is no evidence that Plaintiff appealed the resolution of that request to Jailer Adams.

The sixth grievance was filed on December 22, 2011. (Docket No. 79-17, at 10.) That grievance again concerned Plaintiff's inability to visit with his wife. Plaintiff received a response that same day from Jail officials explaining why his request was denied. (Docket No. 79, at 10.) There is no evidence that Plaintiff appealed the resolution of that request to Jailer Adams.

On January 12, 2012, Plaintiff submitted a sick call request form claiming he had been sexually assaulted by a guard the previous night. (Docket No. 79-15, at 21.) Plaintiff received a written response from Chief Deputy Garrison that same day, informing Plaintiff that Jail officials had reviewed the security video of the alleged incident and determined Plaintiff's complaint to be invalid and without merit. (Docket No. 79-25.) There is no evidence that Plaintiff appealed the resolution of that complaint to Jailer Adams.

On January 25, 2012, Plaintiff submitted his seventh formal grievance, complaining of a "lack of, failure to provide basic human hygene [sic] products, breach of ministral [sic] duties, [and] failure to provide clean sanitary environment." (Docket No. 79-17, at 11.) Jail officials provided a detailed response to that grievance the following day. (Docket No. 79-17, at 11.) There is no evidence that Plaintiff appealed the resolution of that grievance to Jailer Adams.

On April 27, 2012, Plaintiff submitted his eighth grievance, complaining that his cell did not have an ice cooler despite that other cells did. (Docket No. 79-17, at 12.) Jail officials responded to that grievance the same day, explaining that not all cells had coolers. (Docket No. 79-17, at 12.) There is no evidence that Plaintiff appealed the resolution of that grievance to Jailer Adams.

On May 8, 2012, Plaintiff submitted his ninth grievance, complaining about a lack of cleaning detergent in his mop water. (Docket No. 79-17, at 13.) Jail officials responded to that grievance the same day, explaining that the ratio of detergent to water

had not changed. (Docket No. 79-17, at 13.) There is no evidence that Plaintiff appealed the resolution of that grievance to Jailer Adams.

On June 4, 2012, Plaintiff submitted his tenth grievance. (Docket No. 79-17, at 14-15.) This two-page grievance complained of a lack of soap, toothbrush, toothpaste, and toilet paper. Jail officials responded on June 6, 2012, informing Plaintiff that his complaint would be looked into and ensuring him that he would be provided the necessary hygiene products. (Docket No. 79-17, at 14.) There is no evidence that Plaintiff appealed the resolution of that grievance to Jailer Adams.

On August 27, 2012, Plaintiff submitted an eleventh grievance, again complaining of a lack of toiletries and accusing the Jail of mismanaging funds. (Docket No. 79-17, at 16.) Jail officials responded the following day, explaining that access to personal hygiene items was controlled and advising Plaintiff as to the proper procedure for obtaining additional items when needed. (Docket No. 79-17, at 16.) There is no evidence that Plaintiff appealed the resolution of that grievance to Jailer Adams.

On September 1, 2012, Plaintiff submitted a twelfth grievance "concerning unanswered grievances." (Docket No. 79-17, at 17.) Jail officials responded on September 4, 2012, explaining that all grievances were answered; that medical requests would be addressed by medical personnel; and that Plaintiff's complaints regading other inmates would not be discussed with him. (Docket No. 79-1, at 17.) There is no evidence that Plaintiff appealed the resolution of that grievance to Jailer Adams.

On September 9, 2012, Plaintiff was taken to Lourdes Hospital in Paducah, Kentucky, after he was found lying on the floor near his toilet. (Docket No. 79-15, at

26.) Although Plaintiff was found "shaking and unresponsive," his breathing and pulse were normal, his skin was warm, and his pupils were equal and reactive. (Docket No. 79-15, at 26.) Lourdes Hospital physicians found no serious medical problems, prescribed ibuprofen and instructed Plaintiff to rest, and recommended that Plaintiff follow up with a mental health specialist. (Docket No. 79-26.) Thereafter, on September 16, 2012, Plaintiff submitted a thirteenth grievance, complaining of "denial of medical treatment," which appears to relate to the incident on September 9. (Docket No. 79-17, at 18.) This grievance alleged a lack of follow-up treatment for Plaintiff's "ongoing prolong [sic] mental distress." (Docket No. 79-17, at 18.) Jail officials responded the following day, September 17, informing Plaintiff that his requests to see mental health had been received and that he would see mental health that day, and assuring Plaintiff that he was being treated in accordance with the physician's orders. (Docket No. 79-17, at 18-19.) There is no evidence that Plaintiff appealed the resolution of that grievance to Jailer Adams.

STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of

his position; he must present evidence on which the trier of fact could reasonably find for him. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Additionally, the Court acknowledges that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972). The duty to be less stringent with *pro se* complainants, however, "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted), and the Court is not required to create a claim for a *pro se* plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the "courts to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also

transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest argument and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)

DISCUSSION

Defendants argue that Plaintiff's claims should be dismissed for two principal reasons. First, they argue that Plaintiff's claims fail both the "physical injury" and "exhaustion of remedies" requirements of the Prison Litigation Reform Act (PLRA). Second, they insist that regardless of that Act's requirements, Plaintiff's 42 U.S.C. § 1983 claims fail as a matter of law because he cannot prove a violation of his constitutional rights. Because the Court finds the former argument dispositive, it need not address the merits of Plaintiff's § 1983 claims and, instead, will focus its analysis on the requirements of the PLRA.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA further provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id.* § 1997e(e). The term "prisoner" is defined by the PLRA to mean "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.* § 1997e(h).

Plaintiff clearly meets the statutory definition for "prisoner." He was arrested in December 2010 and convicted and sentenced in January 2013. Furthermore he has been incarcerated at the Jail since his arrest and remains incarcerated there today. Thus, his claims are subject to the PLRA's exhaustion-of-administrative-remedies requirement as well as the physical-injury requirement.

## I. Plaintiff Failed to Exhaust His Available Administrative Remedies.

As noted above, the PLRA requires a prisoner to exhaust all available administrative remedies before commencing an action with respect to prison conditions. § 1997e(a). The United States Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). An inmate must allege and demonstrate that he has exhausted all available administrative remedies. *E.g.*, *Burden v. Price*, 69 F. App'x 675, 676 (6th Cir. 2003); *cf. Jones*, 549 U.S. at 921 (concluding the PLRA does not require inmates "to specifically plead or demonstrate exhaustion *in their complaints*" (emphasis added)). The PLRA requires exhaustion "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001). "[S]o long as the prison system has an administrative process that will review a prisoner's complaint, even when the prisoner seeks monetary damages, the prisoner must exhaust his prison remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 308 (6th Cir. 1999) (citing *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999)); *see also Lavista v. Beeler*, 193 F.3d 254, 256-58 (6th Cir. 1999) (holding that the PLRA's exhaustion requirement applied to a federal inmate seeking monetary, injunctive, and declaratory

relief). Furthermore, the Sixth Circuit has consistently held that the PLRA's exhaustion requirement applies "even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested; and even where [the prisoner] believe[s] the procedure to be ineffectual or futile." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (citing *Brock v. Kenton Cnty.*, 93 F. App'x 793, 798 (6th Cir. 2004); *Booth*, 532 U.S. at 741; *Pack v. Martin*, 174 F. App'x 256, 262 (6th Cir. 2006)).

At all times pertinent to this proceeding, the Jail had a written policy governing its grievance procedures. (Docket No. 79-28.) The Jail's grievance procedure arguably is, as Defendants suggest, "a model of simplicity." (*See* Docket No. 79-1, at 13.) It involves a mere two steps: first, the submission of a written grievance to the Chief Deputy Jailer and, second, an appeal to the Jailer. This procedure is set out in plain, easily understood language in the inmate handbook that is provided to all inmates upon arrival. Plaintiff has not asserted that he was unaware of this procedure or that it was unavailable to him—in fact, his many grievance submissions indicate that he clearly understood how the grievance procedure worked.

Upon reviewing the Plaintiff's grievance record, the Court finds that he has failed to exhaust his available administrative remedies as required by the PLRA. First, Plaintiff failed to exhaust his available administrative remedies relative to his deliberate indifference claim against McCracken County for injunctive relief based on his allegations of unsanitary and dangerous conditions at the Jail. The record reflects that Plaintiff submitted four grievances prior to filing suit in this Court on September 30,

2011.[2] None of those four grievances raise the issue of either unsanitary or dangerous conditions at the Jail. Even if they had, there is no evidence that Plaintiff ever proceeded past the first step of the grievance procedure by submitting an appeal to Jailer Adams.[3] Therefore, because the Court finds that Plaintiff has failed to exhaust his available administrative remedies relative to his deliberate indifference claim for unsanitary and dangerous conditions at the Jail, this claim fails under § 1997e(a) and must be dismissed.

Second, Plaintiff failed to exhaust his available administrative remedies relative to his deliberate indifference claim against McCracken County and Jailer Adams for monetary damages based on physical injury allegedly suffered from exposure to paint fumes. The record shows that none of the grievances submitted by Plaintiff—either before the filing of his Complaint or after—raise or even mention his complaints about paint fumes. And even if they had, Plaintiff never proceeded past the first step of the grievance procedure by submitting an appeal to Jailer Adams. In fact, when Plaintiff was deposed on September 13, 2012, he conceded that he never filed a grievance regarding the paint fumes:

> Q: Did you file a grievance about the paint?
>
> A: No, I did not. . . .

---

[2] The four grievances submitted prior to September 30, 2011, were those submitted on January 15, 2011, (Docket No. 79-17, at 1); January 16, 2011, (Docket No. 79-17, at 2-4); January 27, 2011, (Docket No. 79-17, at 5-6); and January 30, 2011, (Docket No. 79-17, at 7).

[3] This is also true of Plaintiff's grievances submitted after the filing of his Complaint. Thus, to the extent any of those grievances concerned the issue of either dangerous or unsanitary conditions, Plaintiff still failed to exhaust his available administrative remedies by failing to pursue those grievances past the initial grievance-submission stage.

>                . . . .
> Q: What action did you take to tell Bill Adams that you had
>    a problem with the painting occurring in your cell?
>
> A: None. They were painting the whole jail. I don't believe
>    I had any -- told him anything about that.

(Docket No. 78, at 55-56.) Accordingly, because Plaintiff has failed to exhaust his available administrative remedies relative to his deliberate indifference claim based on physical injury allegedly suffered from exposure to paint fumes, this claim similarly fails under § 1997e(a) and must be dismissed.

## II. Plaintiff's Claims Also Fail the PLRA's Physical-Injury Requirement.

In its initial screening Order, the Court wrote, "[b]ecause Plaintiff does not allege a present, existing injury, he cannot recover compensatory damages for the emotional distress he claims he is suffering." (Docket No. 23, at 5.) The Court subsequently allowed Plaintiff to amend his Complaint and add a claim for monetary damages based on the physical injury he allegedly suffered from exposure to paint fumes. (Docket No. 64, at 12.) Upon reviewing the record at this stage in the litigation, it is now clear to the Court that Plaintiff has failed to come forward with evidence of physical injury sufficient to satisfy the PLRA's physical-injury requirement.

As noted above, the PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Sixth Circuit has routinely held that, in the absence of physical injury, the PLRA bars recovery of compensatory damages for purely mental and emotional injuries. *E.g.*, *Grissom v. Davis*, 55 F. App'x 756, 758 (6th Cir. 2003);

*Lucas v. Nichols*, 181 F.3d 102 (6th Cir. 1999) (unpublished table decision). Though the physical injury contemplated by § 1997e(e) need not be significant, it must be more than *de minimis* to state a viable Fourteenth Amendment claim. *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003); *see Corsetti v. Tessmer*, 41 F. App'x 753, 755 (6th Cir. 2002) (finding two small bruises and minor cuts were *de minimis* injuries); *Benson v. Carlton*, 229 F.3d 1150 (6th Cir. 2000) (unpublished table decision) (finding inmate's complaints of a "whirling sensation in his head" after missing a meal was *de minimis* for purposes of § 1997e(e)).

Here, Plaintiff has failed to put forth evidence of physical harm sufficient to satisfy the PLRA's physical-injury requirement. He offers no proof of physical injury caused by the allegedly dangerous and unsanitary conditions of the Jail, by his exposure to paint fumes, or by the action or inaction of any Defendant. At most, he offers conclusory, unsubstantiated statements of fact in support of his claims, which, even taken as true, establish no more than *de minimis* injury. Because he has not made the requisite showing of a physical injury, his claim for monetary damages against McCracken County and Jailer Adams, even had that claim been properly exhausted, is not actionable under § 1997e(e) and must be dismissed.

CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff Mark Taylor's claims fail as a matter of law under the PLRA. Accordingly;

IT IS HEREBY ORDERED that Defendants McCracken County and Bill Adams' Motion for Summary Judgment, (Docket No. 79), is GRANTED, and Plaintiff's claims are DISMISSED with prejudice.

IT IS HEREBY FURTHER ORDERED that Plaintiff's "Dispositive Motion to Allege Waiver of Immunity by Defendants Policy of Negligent, Willful, Wanton, Malicious Conduct Against Plaintiff on the Grounds of Lack of Subject Matter Raised by Defendants," (Docket No. 84), is DENIED as moot.

A separate Order of final judgment will issue concurrently with this Opinion.

IT IS SO ORDERED.

Date:

cc: Plaintiff Mark A. Taylor, *pro se*
Counsel for Defendants